IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| JEAN K. MITCHELL, | ) | CASE NO. 12-70856 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM DECISION

This case is before the Court on the Debtor's objection to a proof of claim filed by Robert G. and Nicki M. Jenkins. For the reasons set forth below, the Court will overrule the Debtor's objection.

FINDINGS OF FACT

The Debtor filed a petition under Chapter 13 of the Bankruptcy Code on May 2, 2012. The Debtor listed in Schedule E unsecured priority debt of $26,373.00, and in Schedule F unsecured nonpriority debt of $64,582.73, which included a scheduled debt to Mr. and Mrs. Jenkins in the amount of $3,500. This debt was not listed as disputed, unliquidated or contingent. Mr. and Mrs. Jenkins filed a proof of claim and attached a copy of the Note dated November 15, 1994.[1] The proof of claim was in the total amount of $35,096.41, which included the principal amount of $15,000 and compounded interest totaling $20,096.41. The sheet filed with the proof of claim containing the calculation of the amount due indicates that no payment whatsoever has been made on the debt evidenced by the Note. Mr. and Mrs. Jenkins claimed interest compounded on an annual basis although no provision in the Note explicitly provided for compounding of unpaid accrued interest.

---

[1] The Note indicates its makers to be the Debtor and her husband, James Mitchell. The Court understands that Mr. Mitchell and Mrs. Jenkins are brother and sister.

The Debtor filed an Amended Chapter 13 Plan on June 29, 2012. This Plan proposed to pay priority unsecured creditors $26,373.00 and provided for a nominal distribution to unsecured general creditors. The total unsecured debt listed in the Plan is the exact total provided in Schedule F, $64,582.73. This amount includes the $3,500 scheduled debt owing to Mr. and Mrs. Jenkins and clearly indicates that the Debtor intended to make some payment upon that scheduled debt. On September 19, 2012, the Debtor filed an objection to the claim, stating that it was barred by the statute of limitations. No response to that objection has been filed. The objection came to be heard on November 7, 2012. The Debtor testified concerning the background of filing the schedules and the circumstances surrounding the debt owed to her in-laws. She clearly recognized the existence of the debt and did not dispute the amount set forth in the proof of claim. She explained that she did not have a copy of the Note when she prepared the information for the schedules and simply did not recall the amount of the debt, not very surprising in light of its age. At the conclusion of the Debtor's testimony and arguments made by Debtor's counsel, the matter was taken under advisement.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. The objection is a "core" bankruptcy matter under § 157(b)(2)(B) because it requires the Court to rule upon the allowance or disallowance of a claim against the estate.

The Debtor objected to the Creditor's claim on the basis that it was barred by the

statute of limitations. Va. Code Ann. § 8.3A-118(b) provides the applicable statute of limitations, "If no demand for payment [with respect to a demand note] is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years." The Note is dated November 15, 1994, which is after the effective date[2] of Title 8.3A. The Note states on its face that it is "payable on demand" and therefore is considered a demand note. No evidence was presented that a demand was made on this Note, therefore the statute of limitations provided by § 8.3A-118(b) would have run out in 2004. However, Va. Code Ann. § 8.1-103 sets out that other principles of law and equity, unless specifically displaced by a particular provision, continue to apply in interpreting and applying provisions of the Uniform Commercial Code. The first paragraph of the Official Comment to § 8.3A-118 makes a specific reference to § 8.1-103.[3]

Va. Code Ann. § 8.01-229(G) states that a debt, which would otherwise be barred by the statute of limitations, can be revived by a new promise:

> If any person against whom a right of action has accrued on any contract, other than a judgment or recognizance, promises, by writing signed by him or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection.

The Virginia Supreme Court has applied without discussion § 8.01-229(G) to a statute of

---

[2] January 1, 1993.

[3] "Section 3-118 does not attempt to state all rules with respect to a statute of limitations. For example, the circumstances under which the running of a limitations period may be tolled is left to other law pursuant to Section 1-103." Official Comment 1 to Va. Code Ann. § 8.3A-118.

3

limitations provided by the Uniform Commercial Code. *See Guth v. Hamlet Assocs., Inc.*, 230 Va. 64, 76, 334 S.E.2d 558, 566 (1985) (applying § 8.01-229(G) to the statute of limitations contained in § 8.3-122, now superceded by § 8.3A-118). In reading § 8.1-103 with *Guth*, a right of action upon a stale claim can be revived under the circumstances provided for in § 8.01-229(G), even when the statute of limitations is governed by § 8.3A-118(b).

In a Fourth Circuit Court of Appeals decision, that Court determined that whether an acknowledgment of a debt constitutes an implied promise to pay turns on the intent of the promisor. *Cadle Co. v. Berkeley Plaza Assocs.*, No. 99-1908, 2000 U.S. App. LEXIS 10910, at *10 (4th Cir. Va. May 17, 2000). The Supreme Court of Virginia has clearly demonstrated a willingness to imply a promise to pay from statements acknowledging the existence of a debt for which the individual is responsible. For example, in the case of *Nesbit v. Galleher*, the Court set out, "[The letter] contains no denial of the correctness of the amount or the fact that it was due. On the contrary, it impliedly admits the writer's liability for a subsisting debt which is due and expresses a willingness to pay." *Nesbit v. Galleher*, 174 Va. 143, 149, 5 S.E.2d 501, 503 (1939). The Court affirmed the trial court's decision and held that by writing the letter, the defendant sufficiently acknowledged the debt in a signed writing, which removed the bar of the statute of limitations. *Id* at 150. Here the writings in question, the Debtor's Schedule F and Amended Chapter 13 Plan, taken together, unequivocally admit the existence of the debt. By failing to list the debt as contingent, unliquidated, or disputed, the Debtor admitted the existence of and revived the debt through her signed writing.

As this Court noted in a 2011 decision, *In re Kell*, Case No. 11-71388 (Bankr. W.D. Va. Nov. 17, 2011), "Statements contained in the schedules of a bankruptcy debtor can

4

constitute binding admissions of the factual matters set forth in such schedules." Slip op. at 7, citing *Larson v. Groos Bank,* 204 B.R. 500, 502 (W.D. Tex. 1996); *In re Kaskel*, 269 B.R. 709, 715-16 (Bankr. D. Idaho 2001); *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001); *Matter of Musgrove*, 187 B.R. 808, 812-13 (Bankr. N.D. Ga. 1995); 2 Hon. Barry Russell, *Bankruptcy Evidence Manual* § 801.22, at 873-76 (2010-11 ed.). *See also* F.R.E. 801(d)(2). In this case the Debtor represented in Schedule F that her debt owing to Mr. and Mrs. Jenkins was undisputed. Furthermore, the Debtor's testimony and the statements by her counsel at the hearing indicate that she recognized the fact that she owed the debt in the full amount due under the Note. She went on to explain that in preparing her schedules, she was rushed, did not have a copy of the Note, and did not recall its exact amount. Indeed, in her testimony she never once disputed the amount claimed in the proof of claim. By filing the proof of claim, Mr. and Mrs. Jenkins indicated that they still consider the debt valid. Moreover, the fact that the Debtor included the $3,500 debt in the amount she proposed to pay (in part) through her Plan, evidenced by repeating the exact aggregate total number from Schedule F in the Plan, is further evidence of the Debtor's recognition of the validity of the debt. In contrast to a petition filed under Chapter 7, one filed under Chapter 13 evidences an intent to pay one's just debts from future income to the extent that the bankruptcy debtor's resources may make such payment feasible. Accordingly, the Debtor's acknowledgment of the debt in the context of filing a Chapter 13 case implies a promise to repay.

Both the obligors on the Note and its payees are Virginia residents. The Note clearly appears to have been made in Virginia and is controlled by Virginia law. Under Virginia law a note providing for payment of interest is interpreted to mean payment of simple interest from the date the note is made to the date of payment, unless the note explicitly provides for

5

payment of compound interest. *See Blanchard v. Dominion Nat'l Bank*, 130 Va. 633, 637, 108 S.E. 649, 651 (1921). "The general rule of law is that interest should not bear interest. The law does not favor compound interest, and in the absence of special agreement, interest will not be allowed on interest." 10B Michie's Jurisprudence, *Business* §31 (2011). The Note attached to the Creditor's proof of claim does not explicitly provide for compound interest. Therefore, the claim will be allowed in the amount of the $15,000 original principal amount plus simple interest at the rate of 5% from November 15, 1994 to the filing date, as the legal amount due as of that date. The Court calculates the amount due as follows:

| | |
|---|---:|
| Principal | $15,000 |
| Interest at 5% per annum to 11/15/2011 (17 years) | 12,750 |
| Interest at 5% per annum from 11/15/2011 to 05/02/2012 (169 days) | 347 |
| TOTAL | $ 28,097 |

The Court wishes to explain its reasons for overruling the Debtor's objection when the parties in interest have not filed any response to that objection. While the Court does not perceive that it has any responsibility to raise an affirmative defense on behalf of an affected creditor, it does believe that it ought not grant relief when, under its understanding of the law, the Debtor's own schedules and other filings, and other evidence before the Court in the case, the party seeking the relief has not put forth a prima facie case demonstrating its entitlement to the relief sought. In such situations the Court believes it has an independent duty to decline to award relief irrespective of any failure on the part of the affected party to respond. To fail to fulfill that perceived duty is implicitly to fail to do justice to innocent creditors, who, having gone to the trouble to file a proof of claim for the debt admittedly owing to them, should not suffer the

disallowance of that claim unless their lack of entitlement thereto clearly appears.[4]

An Order in accordance with this Memorandum Decision will be entered contemporaneously herewith.

Decided this 16th day of November, 2012.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[4] The Court wishes to note here that the interposition of a statute of limitations defense upon the advice of the Debtor's bankruptcy counsel appears to have nothing to do with any desire on the Debtor's part to avoid responsibility to her husband's family, but rather because the amount of such debt, when combined with the total of her other unsecured general debt, may preclude her from Chapter 13 relief.